Ashley R. Cadotte, OSB #122926
Ashley Cadotte Law, LLC
ashley@ashleycadottelaw.com
2905 NE Broadway St.
Portland, OR 97232
Telephone: (971) 804-0898

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:25-cr-00433-AB |
| v. | REPLY TO DEFENDANT'S RESPONSE TO VICTIM'S NUNC PRO TUNC MOTION TO QUASH SUBPOENAS AND OPPOSITION TO PERMITTING SERVICE OF SUBPOENAS FOR PERSONAL OR CONFIDENTIAL INFORMATION UNDER RULE 17(c)(3) |
| JORDAN JAMES SCOTT, | |
| Defendant. | |

The victim in this case, Adult Victim 1 (AV1), submits this Reply to supplement her argument in support of her request that this Court to quash any subpoenas that have been issued in this case in violation of the notice requirement of Federal Rule of Criminal Procedure 17(c)(3), and to address future arguments relating to the relevancy, specificity and admissibility of the records sought by Defendant.

//

//

//

**Page 1 - REPLY TO DEFENDANT'S RESPONSE TO VICTIM'S NUNC PRO TUNC MOTION TO QUASH SUBPOENAS AND OPPOSITION TO PERMITTING SERVICE OF SUBPOENAS FOR PERSONAL OR CONFIDENTIAL INFORMATION UNDER RULE 17(c)(3)**

## I.    TIMELINE OF EVENTS

On April 17, 2026, Defendant filed an *ex parte* renewed motion for court order permitting service of subpoenas for AV1's personal or confidential information under Federal Rule of Criminal Procedure 17(c)(3). ECF 48. The same day, April 17, 2026, the court signed the *ex parte* renewed motion for court order permitting service of subpoenas for AV1's personal or confidential information under Federal Rule of Criminal Procedure 17(c)(3). ECF 50.

The court order permitted Defendant to serve a subpoena duces tecum on the below third-parties for AV1's records within the last ten years pertaining to her mental health diagnoses and treatment, substance use and treatment, involvement in physical disputes as either a victim or assailant, and physical injuries sustained by AV1 due to self-harm, substance use, and/or physical altercations with a third party:

1.  BestCare in Madras, Oregon;

2.  Warm Springs HIS and Wellness Center in Warm Springs, Oregon;

3.  Sage View Psychiatric Center in Bend, Oregon;

4.  St. Charles Hospital (both in Bend, Oregon and Madras, Oregon); and

5.  Madras High School in Madras, Oregon

The order provided AV1 five days to advise the Court of any objection. *Id.*

On April 17, 2026, Defendant sent a copy of their *ex parte* renewed motion to the PO Box of AV1's father via certified mail. See Defense Exhibit 3. On April 20, 2026, Defendant sent a copy of the signed *ex parte* order on the renewed motion to the PO Box of AV1's father via certified mail. *See* Defense Exhibit 4. Both the motion and order were delivered to AV1's father on May 1, 2026. *See* Defense Exhibit 5. AV1's father did not deliver AV1's mail to her.

**Page 2 - REPLY TO DEFENDANT'S RESPONSE TO VICTIM'S NUNC PRO TUNC MOTION TO QUASH SUBPOENAS AND OPPOSITION TO PERMITTING SERVICE OF SUBPOENAS FOR PERSONAL OR CONFIDENTIAL INFORMATION UNDER RULE 17(c)(3)**

Based on the information defense learned in the records received from the subpoenas duces tecums ordered on April 17, 2026, defense filed an *ex parte* supplemental motion for court order permitting service of subpoenas for AV1's personal or confidential information under Federal Rule of Criminal Procedure 17(c)(3), requesting that the Court enter an order permitting service of additional subpoenas for Warm Springs Behavioral Health Center and Warm Springs Psychiatric Mental Health Nurse Practitioner, Zella Moore for AV1's records within the last ten years pertaining to her mental health diagnoses and treatment, substance use and treatment, involvement in physical disputes as either a victim or assailant, and physical injuries sustained by AV1 due to self-harm, substance use, and/or physical altercations with a third party. EFC 60.

On June 12, 2026, Defendant sent a copy of the *ex parte* supplemental motion for court order permitting service of subpoenas for AV1's personal or confidential information under Federal Rule of Criminal Procedure 17(c)(3) to the PO Box of AV1's father via certified mail. *See* Defense Exhibit 6. Defense did not include in their mailing a copy of the proposed order. The motion was picked up from the post office on June 17, 2026. *See* Defense Exhibit 7. This mailing was not delivered to AV1 from whomever picked it up from the post office on June 17, 2026.

On June 23, 2026, the Court signed the *ex parte* order on supplemental motion for court order permitting service of subpoenas for AV1's personal or confidential information under Federal Rule of Criminal Procedure 17(c)(3). ECF 67.

On June 23, 2026, following the Government's receipt of extensive records of AV1's personal, confidential and privileged information from defense, AV1 became aware of Defendant's *ex parte* renewed motion and court order permitting service of subpoenas for AV1's

**Page 3 - REPLY TO DEFENDANT'S RESPONSE TO VICTIM'S NUNC PRO TUNC MOTION TO QUASH SUBPOENAS AND OPPOSITION TO PERMITTING SERVICE OF SUBPOENAS FOR PERSONAL OR CONFIDENTIAL INFORMATION UNDER RULE 17(c)(3)**

personal or confidential information that was filed and signed on April 17, 2026, and the *ex parte* supplemental motion for court order permitting service of subpoenas for AV1's personal or confidential information. AV1 promptly objected to any third party subpoenas requiring production of her personal or confidential information and filed a motion to quash the subpoenas previously permitted by court order on August 17, 2026 and opposing the order permitting service of subpoenas entered on June 23, 2026. ECFs 68, 72.

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 17(c) "governs issuance of subpoenas duces tecum in federal criminal proceedings." *United States v. Nixon*, 418 U.S. 683, 697-98 (1974). Rule 17(c)(3) provides the sole avenue for criminal defendants to obtain personal or confidential information about a crime victim from a third party. *See* e.g., *United States v. Llanez-Garcia*, 735 F.3d 483, 498 (6th Cir. 2013).

In order to obtain a Rule 17(c) subpoena, the moving party must persuade the court: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; *and* (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Krane*, 625 F.3d 568, 574 (9th Cir. 2010) (quoting *United States v. Nixon*, 418 U.S. 683, 699–700 (1974) (emphasis added)). In other words, the party seeking personal or confidential information of a victim from third-party medical providers "must demonstrate to the court '(1) relevancy; (2) admissibility; and (3) specificity.'" *Sleugh*, 896 F.3d at 1012 (quoting *Nixon*, 418 U.S. at 700).

**Page 4 - REPLY TO DEFENDANT'S RESPONSE TO VICTIM'S NUNC PRO TUNC MOTION TO QUASH SUBPOENAS AND OPPOSITION TO PERMITTING SERVICE OF SUBPOENAS FOR PERSONAL OR CONFIDENTIAL INFORMATION UNDER RULE 17(c)(3)**

A subpoena requiring the production of personal or confidential information about a victim  "may be served on a third party only by court order." Fed. R. Crim. P. 17(c)(3). Before entering that order, the issuing party must give notice to the victim so that he or she may move to quash or modify the subpoena. *Id.* "Uniformly, federal courts have held that notice of a subpoena to a victim or their representatives is mandatory under Rule 17(c)(3) before a court may issue a subpoena." *United States v. Glenn*, 341 F.R.D. 217, 220 (N.D. Ohio 2022) (*citing United States v. Latimore*, No. 08-CR-20633, 2010 U.S. Dist. LEXIS 1874, 2010 WL 148231, at *2 (E.D. Mich. Jan. 11, 2010); *United States v. Vanskike*, No. 18-10055-HLT, 2019 U.S. Dist. LEXIS 82716, 2019 WL 2137284, at *1, 3 (D. Kan. May 16, 2019); *United States v. Begay*, No. CR 14-0747 JB, 2018 U.S. Dist. LEXIS 5867, 2018 WL 401265, at *1, 12 (D.N.M. Jan. 12, 2018); *United States v. Levine,* No. 17-CR-55V(Sr), 2019 U.S. Dist. LEXIS 81270, 2019 WL 2097912, at *1, 2 (W.D.N. Y. May 14, 2019)).

If the subpoena calls for personal or confidential information of a victim, the Court must require that the party requesting to serve the subpoena have given notice to the victim—and in ample time for the victim to move to quash or modify—before the subpoena is served. It is not sufficient to place the responsibility on the receiving party or just to demand reasonable efforts to provide notice. *United States v. Ray,* 337 F.R.D. 561 at 573 (S.D.N.Y. 2020). That notice requirement rises above a mere "perfunctory" or "eventual notice" to a victim. *United States v. Lussier*, No. 21-CR-145 (PAM/LIB), 2022 U.S. Dist. LEXIS 220557, 2022 WL 17476661, at *9 (D. Minn. Oct. 11, 2022), report and recommendation adopted, No. CR 21-145 (PAM/LIB), 2022 U.S. Dist. LEXIS 219180, 2022 WL 17466284 (D. Minn. Dec. 6, 2022). Instead, the Rule itself

contemplates notice to afford victims sufficient time to "move to quash or modify the subpoena or otherwise object." Fed. R. Crim. P. 17(c)(3).

### III. ARGUMENT

#### A. Defendant Failed to Comply with the Notice Requirement Set Forth by Rule 17(c)(3)

Under Rule 17(c)(3) notice to the victim is required <u>before</u> entering the order.

> **(3) Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. *Before entering the order* and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

Fed. R. Crim. P. 17(c)(3), *emphasis added*.

It is clear from exhibits submitted by Defendant in his response that notice was not provided to AV1 prior to the entry of the order. The Court granted Defendant's renewed motion for subpoenas for AV1's records on April 17, 2026. ECF 50. There is no possibility that AV1 had notice before the order was entered, as Defendant didn't even mail AV1 his renewed motion for subpoenas for AV1's personal and confidential information from a third-party until the same day the Court signed the order, April 17, 2026. *See* Defense Exhibit 3. Furthermore, given that Defendant sent the motion via certified mail, Defendant was well aware that the mail sent to the PO Box of AV1's father wasn't received by a recipient until May 1, 2026. *See* Defense Exhibit 5.

Defendant argues that the simultaneous mailing and filing of the motion with the entry of the Court order the same day, was sufficient notice. This position is in direct conflict with the plain language of the Rule. On its face, Rule 17(c)(3) plainly provides that, unless exceptional

**Page 6 - REPLY TO DEFENDANT'S RESPONSE TO VICTIM'S NUNC PRO TUNC MOTION TO QUASH SUBPOENAS AND OPPOSITION TO PERMITTING SERVICE OF SUBPOENAS FOR PERSONAL OR CONFIDENTIAL INFORMATION UNDER RULE 17(c)(3)**

circumstances exist, the Court must require notice be given to the victim before entering an order authorizing a subpoena for the victim's personal or confidential information. See, Fed. R. Crim. P. 17(c)(3); *United States v. Lussier*, No. 21-CR-145 (PAM/LIB), 2022 U.S. Dist. LEXIS 220557, 2022 WL 17476661, at *9 (D. Minn. Oct. 11, 2022), report and recommendation adopted, No. CR 21-145 (PAM/LIB), 2022 U.S. Dist. LEXIS 219180, 2022 WL 17466284 (D. Minn. Dec. 6, 2022); *United States v. Hawk*, 17-cr-50 (PJS/LIB), Order [Docket No. 99] (D. Minn. Aug. 11, 2017).

The notice requirement in Rule 17(c)(3) has not been given detailed consideration in this District. However, the analysis of the notice requirement in District's across the Country have found that Rule 17(c)(3) requires defendants to give notice to a defendant prior to seeking personal or confidential information, except when "exceptional circumstances" are present. *United States v. Wills*, 40 F.4th 330, 336 (5th Cir.), cert, denied, 143 S. Ct. 464, 214 L. Ed. 2d 264 (2022). "Uniformly, federal courts have held that notice of a subpoena to a victim or their representatives is mandatory under Rule 17(c)(3) before a court may issue a subpoena." *United States v. Glenn*, 341 F.R.D. 217, 220 (N.D. Ohio 2022) (citing *United States v. Latimore*, No. 08-CR-20633, 2010 U.S. Dist. LEXIS 1874, 2010 WL 148231, at *2 (E.D. Mich. Jan. 11, 2010); *United States v. Vanskike*, No. 18-10055-HLT, 2019 U.S. Dist. LEXIS 82716, 2019 WL 2137284, at *1, 3 (D. Kan. May 16, 2019); *United States v. Begay*, No. CR 14-0747 JB, 2018 U.S. Dist. LEXIS 5867, 2018 WL 401265, at *1, 12 (D.N.M. Jan. 12, 2018); *United States v. Levine*, No. 17-CR-55V(Sr), 2019 U.S. Dist. LEXIS 81270, 2019 WL 2097912, at *1, 2 (W.D.N. Y. May 14, 2019)).

The notice to the victim required by Rule 17(c)(3) rises above a mere "perfunctory" or "eventual notice" to merely inform the victim of the subpoena. *Lussier*, 2022 U.S. Dist. LEXIS 220557, 2022 WL 17476661 at *9. Instead, the Rule itself contemplates notice to afford victims sufficient time to "move to quash or modify the subpoena or otherwise object." Fed. R. Crim. P. 17(c)(3). *United States v. Reinhart*, No. 2:21-CR6, 2024 U.S. District LEXIS 33155 (N.D. Texas Feb. 27, 2024).

To the extent Defendant argues that the Court order issued on April 17, 2026, that provided AV1 five days to advise the Court of any objection is sufficient to satisfy the notice requirement, that argument too fails. Five business days from April 17, 2026, was April 24, 2026. Defendant did not mail the order to AV1 until April 20, 2026. *See* Defense Exhibit 4. The mail that included the order (and the motion) wasn't actually delivered and signed for by AV1's father until May 1, 2026. *See* Defense Exhibit 5. Even if AV1 had been the one to receive the certified mail that included the motion and order on May 1, 2026, she would have already been well past the five-day period the order had allowed her to raise objections and the subpoenas had already been sent out.

If the subpoena calls for personal or confidential information of a victim, the Court must require that the party requesting to serve the subpoena have given notice to the victim—and in ample time for the victim to move to quash or modify—before the subpoena is served. It is not sufficient to place the responsibility on the receiving party or just to demand reasonable efforts to provide notice. *United States v. Ray,* 337 F.R.D. 561 at 573 (S.D.N.Y. 2020). Notice is not an idle gesture. It is required "so that the victim can move to quash or modify the subpoena or otherwise object." Fed. R. Crim. P. 17(c)(3).

**Page 8 - REPLY TO DEFENDANT'S RESPONSE TO VICTIM'S NUNC PRO TUNC MOTION TO QUASH SUBPOENAS AND OPPOSITION TO PERMITTING SERVICE OF SUBPOENAS FOR PERSONAL OR CONFIDENTIAL INFORMATION UNDER RULE 17(c)(3)**

Where the rule makers intended to protect a right to move to modify or quash by the victim, notice must be provided in advance of the service of the subpoena in order for the victim's rights to be most adequately protected. The party requesting authorization for the subpoena to be served also is responsible for ensuring that notice has been provided, placing the responsibility where that responsibility must logically rest and with the person most interested in discharging that responsibility. *Ray* at 573-74.

Here, Defendant was the party requesting authorization of the subpoenas and was thereby the party responsible for ensuring that notice had been provided to AV1 in ample time for her to move to quash or modify. That clearly did not occur and there is no information that exceptional circumstances existed or were presented to the Court that would allow Defendant to bypass the notice requirement. The subpoenas were improperly issued and there is no authority that allows an improperly issued Rule 17 subpoena to be retroactively cured after the fact. "Doing so would seem to contradict the requirements of Rule 17 and allow improperly issued subpoenas to become enforceable upon merely pleading a redo when challenged." *Reinhart*, 2024 U.S. District LEXIS 33155 at *8.

The Fourth Amendment provides all individuals a constitutional right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A person's interest in maintaining the privacy of their "papers and effects", such as their medical records, is of sufficient importance to merit constitutional protection.

Although it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred when defense obtained AV1's personal, confidential and privileged information in violation of Rule 17(c)(3), the Court does have power to effectuate a

partial remedy by ordering Defendant to return or destroy any copies of the records he may

possess. *See Church of Scientology of Cal. v. United States,* 506 U.S. 9, 113 S. Ct. 447 (1992)

> **B. Defendant's *ex parte* supplemental motion for court order permitting service of subpoenas for AV1's personal or confidential information under Federal Rule of Criminal Procedure 17(c)(3) relied on privileged information received in response to an improper subpoena and should be denied.**

Based on the information defense learned in the records received from the subpoenas

duces tecums ordered on April 17, 2026, defense filed an *ex parte* supplemental motion for court

order permitting service of subpoenas for AV1's personal or confidential information under

Federal Rule of Criminal Procedure 17(c)(3), requesting that the Court enter an order permitting

service of additional subpoenas for Warm Springs Behavioral Health Center and Warm Springs

Psychiatric Mental Health Nurse Practitioner, Zella Moore for AV1's records within the last ten

years pertaining to her mental health diagnoses and treatment, substance use and treatment,

involvement in physical disputes as either a victim or assailant, and physical injuries sustained

by AV1 due to self-harm, substance use, and/or physical altercations with a third party. EFC 60.

Given that the subpoenas issued from the April 17, 2026, order did not comply with the

Rule 17(c)(3) notice requirement, the information obtained should be suppressed and any

information Defendant received from the returns of those subpoenas is tainted and cannot be

used as the basis to seek additional subpoenas from third-parties for AV1's personal, confidential

and privileged information.

"The availability of a motion to suppress in future . . . proceedings provides a remedy for

improper disclosures that have already occurred." *In re Grand Jury Subpoena*, 825 F.2d 231 (9th

Cir. 1987) quoting *In re Grand Jury Subpoena (Sells)*, 642 F.2d at 1188.

Furthermore, the requested is information protected by the psychotherapist-patient privilege and not subject to disclosure, discussed in more detail below. Defendant's *ex parte* supplemental motion for court order should be denied and any subpoena that may have been issued as a result should be quashed.

### C. Defendant Fails to Meet the Legal Standards Set Forth by Rule 17(c)

Defendant fails to meet the legal standards required to obtain a third-party subpoena under Rule 17(c) because: (1) AV1's mental health information is protected by the psychotherapist-patient privilege and therefore inadmissible; and (2) the information defendant seeks is not relevant, and any minimal probative value of the requested information is substantially outweighed by the potential for undue prejudice and AV1's privacy interests. These arguments are addressed in turn below.

### i. Defendant Seeks Information Protected by the Psychotherapist - Patient Privilege.

Defendant's request for AV1's mental health records implicates the federal psychotherapist-patient privilege. In *Jaffee v. Redmond*, the Supreme Court confirmed that a federal common-law privilege exists regarding such records. *Id*., 518 U.S. 1, 11 (1996). The privilege protected those records "from compelled disclosure," and should not be subjected to a balancing of interests: "An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Id*. (citation omitted). Accordingly, any disclosure of AV1's mental health records must grapple with the privileged character of the records.

The psychotherapist-patient privilege applies to protect information communicated by and to psychotherapists for the purposes of treatment. *Jaffee* involved a plaintiff's request for

**Page 11 - REPLY TO DEFENDANT'S RESPONSE TO VICTIM'S NUNC PRO TUNC MOTION TO QUASH SUBPOENAS AND OPPOSITION TO PERMITTING SERVICE OF SUBPOENAS FOR PERSONAL OR CONFIDENTIAL INFORMATION UNDER RULE 17(c)(3)**

notes made by a psychotherapist during sessions with a patient. 518 U.S. at 5. The Supreme Court noted several times that the privilege applied to the notes because they were "confidential communications." *Id.* at 11, 14. But that term was largely a carryover from analogy to other privileges and should be used carefully; the privilege more properly applies to "all knowledge and information gained by the physician in the observation and personal examination of the patient." 25 Wright & Miller, Fed. Prac. & Proc. Evid. § 5530 (1st ed.). The privilege should be interpreted in light of federal common law ("in the light of reason and experience") and with reference to proposed Federal Rule of Evidence 504. *Jaffee*, 518 U.S. at 8; *United States v. Romo*, 413 F.3d 1044, 1048 (9th Cir. 2005) (noting that federal courts may analogize to proposed Rule 504).

Courts have also held that a patient's diagnosis is also covered by the privilege, since it "is born of and inseparably connected to private communications between a therapist and his or her patient." *United States v. White*, No. 2:12-CR-00221, 2013 WL 1404877, at *7 (S.D.W. Va. Apr. 5, 2013), *reversed on other grounds by Kinder v. White*, 609 Fed. Appx 126 (4th Cir. 2015). That reasoning may also apply to other laboratory tests relied on by the psychotherapist. *United States v. Sheppard*, 541 F. Supp. 3d 793, 801 (W.D. Ky. 2021).

There are additional important privacy rights in AV1's mental health records. The Health Insurance and Portability and Accountability Act (HIPAA) protects her records. *Weiland v. City of Concord*, No. 13-CV-5570-JSC, 2014 WL 5358756, at *5 (N.D. Cal. Oct. 20, 2014). A court order authorizes disclosure under HIPPA, *id.*[1], but the statute's protection of records is significant

---

[1] The standards for disclosure of psychotherapy notes under HIPAA is more stringent than other types of records. *DeLeon*, 426 F. Supp. 3d at 911 n. 11.

**Page 12 - REPLY TO DEFENDANT'S RESPONSE TO VICTIM'S NUNC PRO TUNC MOTION TO QUASH SUBPOENAS AND OPPOSITION TO PERMITTING SERVICE OF SUBPOENAS FOR PERSONAL OR CONFIDENTIAL INFORMATION UNDER RULE 17(c)(3)**

when courts grapple with disclosure requests. *United States v. DeLeon*, 426 F. Supp. 3d 878, 915 (D.N.M. 2019) (noting HIPAA protection is assessing a criminal defendant's constitutional rights authorize disclosure of mental health records). Moreover, AV1 has a right to privacy in her health records, though that right (as opposed to the psychotherapist-patient privilege) is subject to a balancing test. *Weiland*, 2014 WL 5358756, at *5.

Information about diagnoses or the purposes of patient's medications go to the heart of the psychotherapist-patient relationship. Indeed, a patient's diagnosis is covered by the psychotherapist-patient privilege, since it "is born of and inseparably connected to private communications between a therapist and his or her patient." *See United States v. White*, No. 2:12-CR-00221, 2013 WL 1404877, at *7, *reversed on other grounds by Kinder v. White*, 609 Fed. Appx 126 (4th Cir. 2015); *Stark v. Hartt Transp. Sys., Inc.*, 937 F. Supp. 2d 88, 91 (D. Maine 2013) (holding that "[a] person's mental health diagnoses and the nature of his or her treatment inherently reveal something of the private, sensitive concerns that led him or her to seek treatment and necessarily reflect, at least in part, his or her confidential communications to the psychotherapist."); *see also U.S. v. Mellette*, 82. M.L. 374, 385 (2022) (interpreting M.R.E. 513, which codified the psychotherapist-patient privilege: "Much like a nonverbatim summary or recollection, a diagnosis or treatment also may provide some evidence of what a patient confidentially told the psychotherapist or what the psychotherapist confidentially told the patient for the purpose of treating the patient's mental condition."). Because medication is often specific to and closely related to a diagnosis, the name and dosage of the medication is also privileged because its disclosure would necessarily tend to disclose the protected diagnosis.

      1. **No criminal discovery obligation entitles Defendant to AV1's privileged mental health records**

**Page 13 - REPLY TO DEFENDANT'S RESPONSE TO VICTIM'S NUNC PRO TUNC MOTION TO QUASH SUBPOENAS AND OPPOSITION TO PERMITTING SERVICE OF SUBPOENAS FOR PERSONAL OR CONFIDENTIAL INFORMATION UNDER RULE 17(c)(3)**

Defendant is not entitled to discovery of privileged mental health records. There exists "no general constitutional right to discovery in a criminal case." *United States v. Lucas*, 841 F.3d 796, 809 (9th Cir. 2016). *Brady v. Maryland* did not create a general constitutional right to discovery, *id.*, only one that operates for certain records in the possession of the government. Here, the government does not possess the records Defendant seeks. Thus, *Brady* does not confer any right of discovery to Barrett here. *United States v. Powell*, No. 4:21-cr-00290, 2023 WL 3170441, at *2-3 (D. Idaho Apr. 27, 2023); *United States v. Meintzschel*, 538 F. Supp. 3d 571, 579 (E.D.N.C. 2021). And because they are not in the possession, custody, or control of the United States, Federal Rule of Criminal Procedure 16 does not entitle Defendant to discovery of AV1's mental health records. *Id.* at 3*; United States v. DeLeon*, 426 F. Supp. 3d 878, 912-13 (D.N.M. 2019).

If any constitutional right authorizes discovery here, it would be the Sixth Amendment's Confrontation Clause. But the Confrontation Clause is "not a constitutionally compelled rule of pretrial discovery." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). And even it if were, it does not override the psychotherapist-patient privilege. The Supreme Court expressly rejected the notion that other interests could be balanced against or outweigh the privilege. *Jaffee*, 518 U.S. at 17. Many courts have held that the Confrontation Clause does not entitle defendants to discovery of privileged mental health records. *Kinder v. White*, 609 Fed. Appx. 126, 131 (4th Cir. 2015); *United States v. Blue*, 340 F. Supp. 3d 862, 869 (D.S.D. 2018); DeLeon, 426 F. Supp. 3d at 916-17. Some courts have held that it does – though those cases are generally older, fewer in number; and they often rely on two factors not present here (the government's possession of information or waiver) or on the balancing-of-interests tests the Supreme Court rejected in *Jaffee*. *DeLeon*,

**Page 14 - REPLY TO DEFENDANT'S RESPONSE TO VICTIM'S NUNC PRO TUNC MOTION TO QUASH SUBPOENAS AND OPPOSITION TO PERMITTING SERVICE OF SUBPOENAS FOR PERSONAL OR CONFIDENTIAL INFORMATION UNDER RULE 17(c)(3)**

426 F. Supp. 3d at 916-17; *Powell*, 2023 WL 3170441, at *4-7 (reviewing authority). Therefore, the Confrontation Clause does not compel disclosure of any privileged material.

Some court have ended the analysis here. They conclude that disclosure of any mental health records must fail against the privilege, particularly where the defendant has not shown any likelihood that the disclosure will result in any admissible evidence. *Meintzschel*, 538 F. Supp. 3d at 582; *Powell*, 2023 WL 3170441, at *6-7. Courts have noted that any level of review within the legal system undercuts the privilege. *United States v. Doyle*, 1 F. Supp. 2d 1187, 1191 (D. Or. 1998); *United States v. Shrader*, 716 F. Supp. 2d 464, 473 (S.D.W. Va. 2010). This Court would be justified in similarly rejecting Defendant's requests.

> ii.  **The information defendant seeks is not relevant, and any minimal probative value of the requested information is substantially outweighed by the potential for undue prejudice and AV1's privacy interests**

AV1 is 24 years old. Defendant seeks records of AV1's for a span of ten years. This is equivalent to nearly half of AV1's life. AV1 has still not seen the *ex parte* filings that support Defendant's request for the specific information he is seeking and why he believes the records would hold such information, putting her in a disadvantaged position to lodge specific objections to the form or substance of the defendant's requests.  The filings that have been made available to AV1 do not tailor the records sought to statements specific to the indicted conduct, but rather make a broadly-crafted request in what appears to be an attempt to capture inadmissible character evidence. Requesting ten years' worth of records pertaining to mental health diagnoses and treatment, substance use and treatment, involvement in physical disputes as either a victim or assailant, and physical injuries sustained by AV1 due to self-harm, substance use, and/or

physical altercations with a third party is significantly broad and not tailored to Defendant's indicted conduct.

In *Nixon*, the Supreme Court noted that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial," but that a subpoena may issue there are "other valid potential evidentiary uses for the same material." *Nixon*, 418 U.S. at 701-02. In *Fields*, the Ninth Circuit reversed a district court's refusal to quash a subpoena where the subpoenaing party failed to assert any evidentiary purpose for the materials other than potentially as impeachment. 663 F.2d at 880.

Similarly, Defendant's requests for records where AV1 was a victim or involved in any physical disputes, her history of substance use – as far back as when she was 14 years old – bears no relevance to the Defendant's charged conduct other than appearing to be a search for potential impeachment material and a "broad request" for documents in the "mere hope" that they will contain exculpatory material, which amounts to little more than a "blind fishing expedition." *See Cuthbertson,* 630 F.2d at 146; *Reed,* 726 F.2d at 576-77.

Even if some of AV1's records are found to be non-privileged and relevant, the Court should still deny Defendant's request because the probative value of such evidence is substantially outweighed by a prevalent danger of unfair prejudice. *See* Fed. R. Evid. 403; *United States v. Hamlett*, No. 19-3069, 2021 WL 5105861, at *2–3 (2d Cir. Nov. 3, 2021) (finding a cross-examination of a witness regarding past mental health history is likely to be probative of very little and highly prejudicial unless a defendant convincingly demonstrates that mental health impaired a witness's ability to remember and to tell the truth); *United States v. Giovinco*, No. 18-CR-14 (JSR), 2020 WL 832920, at *2 (S.D.N.Y. Feb. 20, 2020) (reasoning that the probative

**Page 16 - REPLY TO DEFENDANT'S RESPONSE TO VICTIM'S NUNC PRO TUNC MOTION TO QUASH SUBPOENAS AND OPPOSITION TO PERMITTING SERVICE OF SUBPOENAS FOR PERSONAL OR CONFIDENTIAL INFORMATION UNDER RULE 17(c)(3)**

value of mental health history was "minimal at best" where defense counsel failed to provide a reason as to why a witness's diagnosis had bearing on their ability to accurately perceive or recall conversations with the defendant, or their credibility more generally).

Furthermore, AV1 has a paramount interest in the privacy of her medical health records, and Defendant's right to cross-examine witnesses must be weighed against AV1's privacy interests. *Weiland v. City of Concord*, No. 13-CV-5570-JSC, 2014 WL 5358756, at \*5 (N.D. Cal. Oct. 20, 2014). The protection of medical records under HIPAA is a significant consideration when courts have grappled with disclosure requests such as these. *See, e.g.*, *DeLeon*, 426 F. Supp. 3d at 915. Indeed, the standard for disclosure of psychotherapy notes under HIPAA is more stringent than for other types of records. *Id*. at 911 n.11. And, Defendant provides no basis for overcoming HIPAA's stringent legal protections. Permitting such a wide-ranging discovery into medical and mental health records on such a meager showing as Defendant's would therefore set a dangerous precedent as fewer victims would be willing to come forward for fear that their most private and personal information would be exposed to their alleged assailant and the public. As one Court succinctly summarized, AV1 "is not required to choose between her privacy and seeking the assistance of law enforcement." *United States v. Shrader*, 716 F. Supp. 2d 464, 473 n.4 (S.D.W. Va. 2010).

Indeed, AV1's mental health records are irrelevant or inadmissible and should not be provided to Defendant. *See Id.* at \*11 (finding there is "no clearly established federal right to compel pretrial discovery in a situation like [defendant's]" where the subpoena records "would not have directly provided him with a defense under California law and the trial judge conducted an *in camera* review of the records"); *United States v. Haworth*, 168 F.R.D. 660, 660–62

**Page 17 - REPLY TO DEFENDANT'S RESPONSE TO VICTIM'S NUNC PRO TUNC MOTION TO QUASH SUBPOENAS AND OPPOSITION TO PERMITTING SERVICE OF SUBPOENAS FOR PERSONAL OR CONFIDENTIAL INFORMATION UNDER RULE 17(c)(3)**

(D.N.M. 1996) (concluding that the psychotherapy records were privileged after *in camera* review and not subject to discovery, and stating that the defendants "mistakenly equate their confrontation rights with a right to discover information that is clearly privileged"); *United States v. Antone*, 981 F.2d 1059, 1062 (9th Cir. 1992) (affirming the district court's refusal to grant access to the victim's psychiatric records because they did not have "any bearing on her credibility" or her "veracity" and release of the reports [w]ould only serve to publicize sensitive [and] personal information"). Notably, the Court cannot review, even *in camera*, information that is privileged under the psychotherapist-patient privilege, and should not credit Defendant's attempt to have this Court do so here. *United States v. Doyle*, 1 F. Supp. 2d 1187, 1191 (D. Or. 1998) ("The court's review of the files would itself be a breach of the privilege."); *see also Shrader*, 716 F. Supp. 2d at 473.

As set forth above, Defendant has not met and cannot meet the standard to obtain a subpoena for AV1's medical and mental health records, and certain information regarding her mental health is absolutely privileged.

## CONCLUSION

For the foregoing reasons, AV1 respectfully requests this Court:

1.  Find that Defendant did not meet the Rule 17(c)(3) notice requirement;

2.  Quash the subpoenas that have already issued;

3.  Order Defendant to return or destroy any copies of AV1's private, confidential and privileged records he already possesses; and

4.  Deny the Defendant's supplemental motion for issuance of the additional third-party subpoenas duces tecums for AV1's records.

DATED: July 3, 2026.                         Respectfully submitted,

                                             */s/ Ashley R. Cadotte*
                                             ASHLEY R. CADOTTE, OSB #122926
                                             2905 NE Broadway St.
                                             Portland, OR 97232
                                             971-804-0898
                                             ashley@ashleycadottelaw.com
                                                          *Of Counsel for Victim*